# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

MYKOL T. BROOKSHIRE, )
 )
       Plaintiff, )
 )
v. ) Case No. CIV-15-441-KEW
 )
NANCY A. BERRYHILL, Acting )
Commissioner of Social )
Security Administration, )
 )
       Defendant. )

## OPINION AND ORDER

Plaintiff Mykol T. Brookshire (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 43 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as a county undersheriff and prison correctional officer. Claimant alleges an inability to work beginning June 1, 2009 due to limitations resulting from post-traumatic stress disorder ("PTSD"), low back pain, obesity, mood disorder, and anti-social personality disorder.

**Procedural History**

On July 13, 2012, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On February 3, 2014, an administrative hearing was held before Administrative Law Judge ("ALJ") Lantz McClain in Tulsa, Oklahoma. By decision dated March 19, 2014, the ALJ denied Claimant's requests for benefits. The Appeals Council denied review of the ALJ's decision on September 15, 2015. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to properly evaluate the 100 percent disability rating by the Veterans Administration ("VA"); (2) failing to properly consider the medical source opinion evidence; and (3) failing to perform a proper

4

credibility determination.

**Consideration of Medical Opinion Evidence**

In his decision, the ALJ found Claimant suffered from the severe impairments of history of low back pain, obesity, a mood disorder, and anxiety-related disorder (PTSD), and anti-social personality disorder. (Tr. 105). The ALJ determined Claimant retained the RFC to perform light work. In so doing, the ALJ found Claimant was able to lift and carry up to 20 pounds occasionally and up to ten pounds frequently. Claimant was able to stand and/or walk at least six hours in an eight hour workday and sit at least six hours in an eight hour workday.

Regarding Claimant's mental RFC, Claimant was able to perform simple repetitive tasks where he only had a requirement for relating to supervisors and co-workers on a superficial basis. Claimant was also able to perform tasks where there was no requirement for working with the general public. (Tr. 111).

After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of sorter and hand packager, both of which the ALJ found existed in sufficient numbers in both the regional and national economies. (Tr. 115). As a result, the ALJ determined Claimant was not disabled from June 1, 2009 through the date of the decision. (Tr. 116).

Claimant contends the ALJ failed to properly evaluate the 100 percent disability rating given to him by the VA. The ALJ noted in his decision that Claimant was found to have PTSD

> and received 100% VA benefits for this. However, the parameters for finding disability are significantly different between the VA and the Social Security Administration, and are not binding on each other, *per se*."

(Tr. 109).

The ALJ made reference to the VA disability rating in other areas of the decision as well. He determined Claimant performed semi-skilled tasks associated with his job as a corrections officer and skilled tasks as an undersheriff, in spite of the 100% VA disability rating. (Tr. 112). He also noted Claimant was incarcerated for 27 months during this period. Id.

"Although findings by other agencies are not binding on the Secretary, they are entitled to weight and must be considered." Baca v. Dept. of Health & Human Serv., 5 F.3d 476, 480 (10th Cir. 1993) quoting Fowler v. Califano, 596 F.2d 600, 603 (3rd Cir. 1979). An ALJ is required to discuss the "significance of the VA's disability evaluation" in his decision. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005). The ALJ "must consider and explain why he did not find [the VA determination] persuasive." Id at 1262-63. In this case, the ALJ recognized the different

6

standards considered by the VA and the Social Security Administration, noted the disability rating found by the VA, and provided persuasive reasons for not accepting the rating. The ALJ is not required to find in lockstep with another agency's findings on disability. He adequately considered the VA rating and provided a reasonable basis for rejecting its adoption.

**Consideration of Medical Opinion Evidence**

The ALJ took the testimony of Dr. Simonds, a consultative medical reviewer. Dr. Simonds testified that he had reviewed Claimant's medical records and determined he was diagnosed with back pain with some decreased range of motion, some degenerative changes on imaging studies, minimal scoliosis, muscle pain, joint pain, gastroesophageal reflux, ringing in the ears, some hearing loss, but not to the level of any kind of listing, and fatigue. None of the conditions were found to interfere significantly with employment. (Tr. 127).

On Claimant's mental condition, Dr. Simonds found he was diagnosed in the VA system with a mood disorder, non-specific, and PTSD, but he had never been hospitalized for these conditions. Claimant also reported some mild memory problems. Id.

Dr. Simonds noted the finding by the VA of PTSD but that Claimant continued to work after the diagnosis so it was hard to

7

see the severity of the condition. He noted the difference between the VA system and Social Security system for PTSD to be considered a disability. He did not find much in the way of follow-up treatment or progress notes on the PTSD after January of 2012.

Dr. Simonds concluded Claimant did not meet listing 12.06 for anxiety disorder. He noted moderate limitations in concentration and pace under the "paragraph B" criteria. (Tr. 129).

Under examination by Claimant's counsel, he found that the record supported moderate symptoms of PTSD. However, if the condition were severe, Dr. Simonds stated that he would expect Claimant to have problems dealing with groups of people, so only superficial contact or no contact with the public and co-workers should be included in the limitations. In light of Claimant's moderate problems with concentration, counsel inquired as to "what percentage of the time would an individual have problems concentrating" in a job situation. Dr. Simonds estimated that if it were a simple job, only ten percent, but with a more complex job, it would be about 25 percent. (Tr. 136). Claimant's counsel re-characterized the testimony that "in a very simple job, a person. . . would have difficulty - - moderate would mean 10 percent of the time they'd have difficulty concentrating in a very simply type job" to which Dr. Simonds stated, "[t]hat would be just

my estimate." (Tr. 137).

In the RFC, the ALJ included limitations for Claimant to simple, repetitive tasks which required relating to supervisors and co-workers superficially and no working with the general public. (Tr. 111). He gave Dr. Simonds' opinion "great weight", noting that Dr. Simonds' review of the record "was quite thorough, and finds that his overall assessments and conclusions are consistent with the record. . . ." (Tr. 113).

Claimant argues that the ALJ did not include Dr. Simonds' finding that of Claimant's "not doing ten percent of the job, but being able to complete only 90 percent of it. . . ." (Cl. Brief at p. 5). This mischaracterizes the questioning of Dr. Simonds and his response. An inability to concentrate for ten percent of the time is not equivalent to an inability to do ten percent of a given job. To the extent Claimant contends the ALJ failed to consider the totality of Dr. Simonds' opinion, this Court rejects Claimant's argument. His inclusion of simple, repetitive tasks would encompass the limitation on concentration. Any further limitation urged by Claimant based upon this testimony is not warranted.

Claimant carries the argument further by asserting the ALJ failed to include the ten percent limitation in the hypothetical questions posed to the vocational expert. The question posed by

9

counsel in this vein to the vocational expert only further confused the issue. Counsel asked the expert, "Do you think, over time, a person that's not doing 100 percent, but only doing 90 percent, is going to keep the job?" Again, this question mischaracterizes the testimony provided by Dr. Simonds.

"Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the vocational expert, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. Talley v. Sullivan, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996). Moreover, Defendant bears the burden at step five of the sequential analysis. Hargis, 945 F.2d at 1489.

The ALJ's questioning of the vocational expert accurately reflected the limitations supported by the medical evidence. The record does not support a finding that Claimant would be unable to perform ten percent of the representative jobs.

Claimant also contends the ALJ failed to ascertain the precise

number of jobs available after the base is eroded with the inclusion of the restriction to jobs with no co-workers. The RFC does not include a limitation to no co-workers but rather to superficial contact. (Tr. 111). Nothing in the record would support further restrictions in this regard.

Claimant asserts the ALJ improperly relied upon the testimony of Dr. Simonds since the testimony was erroneous in regard to the effects of Claimant's PTSD and the fact he worked after the diagnosis of the condition. The fact remains that Claimant was employed while he still reported PTSD symptoms. However, he was never hospitalized for the condition and only received medication from the VA. (Tr. 352-54). Claimant does not direct this Court to any medical record in the file which would indicate an inability to work as a result of severe PTSD. This Court finds no error in the ALJ's consideration of the medical opinion evidence or in the hypothetical questioning of the vocational expert.

### Credibility Determination

The ALJ determined Claimant credibility was undermined by (1) his work history while allegedly suffering from PTSD; (2) conviction of a crime of moral turpitude (theft of money during traffic stops while employed as an undersheriff); (3) untruths told to medical professionals, such as reporting that he was terminated

11

as an undersheriff for missing too many days of work because of his anxiety attacks when, in fact, he was arrested for theft (Tr. 107, 138-39); (4) inconsistencies in activities of daily living - he reported he did not shop while his friend in a third party statement reported he did (Tr. 113-14, 297, 305-06); (5) lack of treatment for PTSD (Tr. 113); (6) evidence of drug seeking behavior - Claimant became angry when the VA denied his request for opiates because he had "no conditions that indicate [a] need for opiates" (Tr. 112, 518, 520); and (7) the medical record did not support the level of functional limitations urged by Claimant. (Tr. 114).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. The ALJ properly analyzed and considered Claimant's testimony in light of the objective medical record and no error is attributed to his credibility analysis.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore,

this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 27th day of September, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE